IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| DIANA TURNER, | ) |
| | ) |
|       Plaintiff, | ) |
| | ) |
| vs. | )   Civil No.   12-cv-1275-CJP |
| | ) |
| CAROLYN W. COLVIN, | ) |
| Commissioner of Social Security, | ) |
| | ) |
|       Defendant.[1] | ) |

**MEMORANDUM and ORDER**

**PROUD, Magistrate Judge:**

In accordance with 42 U.S.C. § 405(g), plaintiff Diana Turner is before the Court, represented by counsel, seeking review of the final decision of the Commissioner of Social Security denying her Supplemental Security Income (SSI).[2]

**Procedural History**

Ms. Turner applied for benefits in April, 2009, alleging disability beginning on June 1, 1991. (Tr. 10). The application was denied initially and on reconsideration. After holding a hearing, ALJ Stephen M. Hanekamp denied the application on September 14, 2011. (Tr. 10-20). Plaintiff's request for review was denied by the Appeals Council, and the decision of the ALJ

---

[1] Carolyn W. Colvin was named Acting Commissioner of Social Security on February 14, 2013. Pursuant to Fed. R. Civ. P. 25(d), Carolyn W. Colvin is automatically substituted as defendant herein. No further action is necessary to continue this action by reason of the last sentence of 42 U.S.C. §405(g). ("Any action instituted in accordance with this subsection shall survive notwithstanding any change in the person occupying the office of Commissioner of Social Security or any vacancy in such office.")

[2] This case was referred to the undersigned for final disposition upon consent of the parties, pursuant to 28 U.S.C. §636(c).  See, Doc. 9.

1

became the final agency decision.   (Tr. 1).

Administrative remedies have been exhausted and a timely complaint was filed in this Court.

## Issue Raised by Plaintiff

Plaintiff raises only one issue, that is, that the ALJ failed to develop the record in that he refused her request for a psychological examination and IQ testing.

## Applicable Legal Standards

To qualify for SSI, a claimant must be disabled within the meaning of the applicable statutes.[3]  For these purposes, "disabled" means the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."   **42 U.S.C. §§ 423(d)(1)(A) and 1382c(a)(3)(A).**

A "physical or mental impairment" is an impairment resulting from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.   **42 U.S.C. §§ 423(d)(3) and 1382c(a)(3)(C).**

"Substantial gainful activity" is work activity that involves doing significant physical or mental activities, and that is done for pay or profit.   **20 C.F.R. §§ 404.1572**.

Social Security regulations set forth a sequential five-step inquiry to determine whether a

---

[3] The statutes and regulations pertaining to Disability Insurance Benefits (DIB) are found at 42 U.S.C. § 423, et seq., and 20 C.F.R. pt. 404.   The statutes and regulations pertaining to SSI are found at 42 U.S.C. §§ 1382 and 1382c, et seq., and 20 C.F.R. pt. 416.   For all intents and purposes relevant to this case, the DIB and SSI statutes are identical.   Furthermore, 20 C.F.R. § 416.925 detailing medical considerations relevant to an SSI claim, relies on 20 C.F.R. Pt. 404, Subpt. P, the DIB regulations.   Most citations herein are to the DIB regulations out of convenience.

claimant is disabled.   The Seventh Circuit Court of Appeals has explained this process as follows:

> The first step considers whether the applicant is engaging in substantial gainful activity. The second step evaluates whether an alleged physical or mental impairment is severe, medically determinable, and meets a durational requirement. The third step compares the impairment to a list of impairments that are considered conclusively disabling. If the impairment meets or equals one of the listed impairments, then the applicant is considered disabled; if the impairment does not meet or equal a listed impairment, then the evaluation continues. The fourth step assesses an applicant's residual functional capacity (RFC) and ability to engage in past relevant work. If an applicant can engage in past relevant work, he is not disabled. The fifth step assesses the applicant's RFC, as well as his age, education, and work experience to determine whether the applicant can engage in other work. If the applicant can engage in other work, he is not disabled.

***Weatherbee v. Astrue***, **649 F.3d 565, 568-569 (7th Cir. 2011).**

Stated another way, it must be determined: (1) whether the claimant is presently unemployed; (2) whether the claimant has an impairment or combination of impairments that is serious; (3) whether the impairments meet or equal one of the listed impairments acknowledged to be conclusively disabling; (4) whether the claimant can perform past relevant work; and (5) whether the claimant is capable of performing any work within the economy, given his or her age, education and work experience.   ***Schroeter v. Sullivan***, **977 F.2d 391, 393 (7th Cir. 1992); see also, 20 C.F.R. §§ 404.1520(b-f).**

This Court reviews the Commissioner's decision to ensure that the decision is supported by substantial evidence and that no mistakes of law were made.   The scope of review is limited. "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive. . . ." **42 U.S.C. § 405(g)**.   Thus, this Court must determine not whether Ms. Turner was, in fact, disabled at the relevant time, but whether the ALJ's findings were supported by substantial evidence and whether any errors of law were made.   **See,** ***Books v. Chater***, **91 F.3d 972, 977-78 (7th Cir. 1996)** (citing ***Diaz v. Chater***, **55 F.3d 300, 306 (7th Cir.**

**1995)**).

This Court uses the Supreme Court's definition of substantial evidence, i.e., "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." ***Richardson v. Perales*, 402 U.S. 389, 401 (1971).**

In reviewing for "substantial evidence," the entire administrative record is taken into consideration, but this Court does not reweigh evidence, resolve conflicts, decide questions of credibility, or substitute its own judgment for that of the ALJ. ***Brewer v. Chater*, 103 F.3d 1384, 1390 (7th Cir. 1997).**   However, while judicial review is deferential, it is not abject; this Court does not act as a rubber stamp for the Commissioner.   See, ***Parker v. Astrue*, 597 F.3d 920, 921 (7th Cir. 2010),** and cases cited therein.

## The Decision of the ALJ

ALJ Hanekamp followed the five-step analytical framework described above. He determined that Ms. Turner had not been engaged in substantial gainful activity since the date of the application and that she had severe impairments of degenerative disc disease, obesity, obstructive sleep apnea, plantar fasciitis/heel spurs, GERD, seizure disorder, anxiety and an alleged learning disorder.   He determined that plaintiff's impairments do not meet or equal a listed impairment.   He specifically considered whether she met a Listing for a mental impairment in making that determination.

The ALJ found that Ms. Turner had the residual functional capacity to perform a limited range of work at the light exertional level.   He accounted for her mental impairments by limiting her to simple, routine tasks.   Plaintiff had no past relevant work.   Based on evidence from a vocational expert, the ALJ found that plaintiff could do jobs which exist in the national economy, such as bench assembler and small piece assembler.

## The Evidentiary Record

The Court has reviewed and considered the entire evidentiary record in formulating this Memorandum and Order. The following summary of the record is directed to the point raised by plaintiff. As plaintiff has not raised an issue with regard to her physical impairments, the Court will not describe that evidence in any detail.

1. **Agency Forms**

Ms. Turner was born in 1971 and was 20 years old on the alleged onset date of June 1, 1991. (Tr. 160). She said that she was unable to work because of narrowing of the spine. (Tr. 153). In a later report, she said she had spurs on her feet. (Tr. 183). She said that she could not concentrate or focus, and that she had a hard time understanding things. (Tr. 199).

Plaintiff attended school through the 11th grade. She was in special education classes. (Tr. 157).

2. **School Records**

The transcript contains school records from several school districts, but no special education records. (Tr. 211- 224). One of the districts indicated that special education records are destroyed five years after the student stops receiving services. (Tr. 217). The school district records show that plaintiff was in special education classes for some subjects. She was noted to be EMH, i.e., educable mentally handicapped. (Tr. 214, 221). She was also characterized as a "slow learner." (Tr. 218). There are no IQ test results in the school records.

3. **Evidentiary Hearing**

Plaintiff was represented by an attorney at the hearing on June 30, 2011. (Tr. 28).

Ms. Turner testified that she left school after the 11th grade because she was having seizures. She did not get a GED. She had a driver's license. She took the test about three times before she passed. (Tr. 30-31). She got married in 1998. (Tr. 31). She lived with her husband and seven year old child. Her husband worked for a company that fertilizes yards. (Tr. 32).

5

She had been sporadically employed in fast food restaurants. She quit the jobs because of problems with comprehension and problems with her back. (Tr. 33). She could not focus and could not concentrate. She had trouble working the cash register because she was not good with money. (Tr. 35-36). Plaintiff testified that she had been in special education classes and she had problems with comprehension. (Tr. 50).

During the day, Ms. Turner is at home with her son. She does few household chores. Her husband does most of the housework. She testified that, were it not for her back pain, she would not have any difficulty making dinner. (Tr. 49-50).

**4.     Medical Records**

Ms. Turner was seen by Dr. Brett Grebing for foot and ankle pain in July, 2009. Dr. Grebing described her as "alert and oriented to person, place and time." Her mood and affect were appropriate, and her recent and remote memory were intact. After examining her, Dr. Grebing discussed treatment recommendations with her, and she verbalized her understanding. (Tr. 428-429).

Raymond Leung, M.D., performed a consultative physical examination on August 5, 2009. Ms. Tuner complained of back pain. She said that she could walk less than a block and was able to lift five pounds. She was 67 ¾" tall and weighed 311 pounds. Dr. Leung described her as "alert and oriented X3." Her memory appeared intact and her fund of knowledge appeared normal. He concluded that she would be able to manage her own funds. (Tr. 315-317).

Treating doctor Jennifer Follwell, D.O., completed a form report for the Illinois Department of Children and Family Services on May 2, 2011. The form stated that it would "aid the Department in determining the physical wellness and capabilities of adults in foster or adoptive homes who are or may be caring for children." The last section stated "I certify that the individual [Ms. Turner] has no physical or cognitive limitations that would prevent her/him from parenting."

6

Dr. Follwell checked "yes." (Tr. 768-769).

On June 14, 2011, Dr. Follwell completed a form entitled Physician's Assessment for Social Security Disability Claim. Her diagnosis was mild lumbar degenerative disc disease. The form asked the doctor to consider her clinical experience with the patient, all medical data, and the combination of the patient's mental and physical impairments in giving her opinion as to the patient's ability to work full time at a sedentary job. Dr. Follwell's answer referred only to back pain and radicular symptoms. She did not indicate that plaintiff had mental limitations or was mentally retarded. (Tr. 544).

## Analysis

Plaintiff's sole point is that the ALJ erred in refusing to order a consultative psychological examination, including IQ testing. She argues that the record before the ALJ was sufficient to trigger a duty to investigate whether she met the requirements of Listing 12.05(C).[4]

A finding that a claimant's condition meets or equals a listed impairment means that the claimant is presumptively disabled. In order to be found presumptively disabled, the claimant must meet *all* of the criteria in the listing. 20 C.F.R. §416.925(d). Plaintiff bears the burden of showing that her condition meets or equals the listed impairment. ***Maggard v. Apfel*, 167 F.3d 376, 379-380 (7th Cir. 1999).**

The Listings are set forth at 20 C.F.R. Supbpart P, App. 1. Listing 12.00 covers mental disorders in general; Listing 12.05 covers mental retardation. Listing 12.00, paragraph (A), explains that the structure of Listing 12.05 is different from the structure of most of the other Listings in the mental disorders section:

> Listing 12.05 contains an introductory paragraph with the diagnostic description for mental retardation. It also contains four sets of criteria (paragraphs A through D). If your

---

[4] Of course, plaintiff was represented by counsel at the administrative stage. She offers no reason why she could not have obtained IQ testing on her own.

impairment satisfies the introductory paragraph and any one of the four sets of criteria, we will find that your impairment meets the listing.

Thus, in order to meet Listing 12.05(C), Ms. Turner must satisfy both the criteria of the introductory paragraph, and the criteria of paragraph (C).

The criteria of the introductory paragraph of Listing 12.05 are "significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period, i.e., the evidence demonstrates or supports onset of the impairment before age 22." The requirement of onset before age 22 is intended to limit 12.05 to an "innate condition" as opposed to conditions caused by disease or accident suffered as an adult. See, ***Novy v. Astrue***, 497 F.3d 708, 709 (7th Cir. 2007). The criteria of 12.05(C) are "valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function."

The ALJ denied her request for IQ testing because the record was not consistent with "mental retardation with deficits in adaptive functioning prior to age 22." Tr. 14, 18. Plaintiff argues that the ALJ applied the wrong standard in determining that the record did not show deficits in adaptive functioning before the age of 22; according to plaintiff, he improperly looked only to whether there was a formal diagnosis of mental retardation.

Plaintiff is incorrect. A fair reading of the ALJ's decision indicates that he considered whether the record supported a finding that (1) she was mentally retarded, *and* (2) she had deficits in adaptive functioning before she reached the age of 22. With regard to her condition before the age of 22, the ALJ said that he had reviewed her school records. (Tr. 18). The school records were the only evidence that related to plaintiff's condition before the age of 22. He found it significant that she left school in the 11th grade because of seizures, and not because of any learning difficulty. (Tr. 14).

Plaintiff argues that the ALJ should have evaluated her deficits using the DSM-IV definition of adaptive-skills limitations. This argument ignores Seventh Circuit precedent. The Seventh Circuit has defined deficits in adaptive functioning as "inability to cope with the challenges of ordinary everyday life." **Novy v. Astrue**, 497 F.3d 708, 710 (7th Cir. 2007). The Seventh Circuit has pointed out that "neither this circuit nor any other circuit court has recognized or established" a requirement that the ALJ use a specific measurement method such as the DSM-IV definition. **Charette v. Astrue**, 508 Fed. Appx. 551, 553 (7th Cir. 2013). Plaintiff points to no evidence in the record that shows that she had deficits in adaptive functioning, defined as the Seventh Circuit defines the term, before the age of 22. She points only to the fact that she was described as a slow learner and "educable mentally handicapped" in the school records, but these descriptions are not evidence that she had deficits in adaptive functioning. And, the fact that a child is placed in special education classes "does not, in itself, establish your actual limitations or abilities." 20 C.F.R. §416.924a(b)(7)(iv).

Although he used the term "mental retardation," it is clear that the ALJ did not rely on the absence of a formal diagnosis of mental retardation. Rather, he evaluated plaintiff's mental condition in light of the evidence. He considered the fact that she had a driver's license, drove a car, left home independently, and cared for her young child by herself while her husband was at work. Further, the ALJ noted that plaintiff herself described her mental impairment as problems with concentration and focus, not low IQ or low intellectual functioning. (Tr. 14, 18).

Courts generally defer to the ALJ's decision about whether to order a consultative examination. Noting that the clamant has the "primary responsibility for producing medical evidence demonstrating the severity of impairments," the Seventh Circuit has recognized that, "because it is always possible to identify one more test or examination an ALJ might have sought, the ALJ's reasoned judgment of how much evidence to gather should generally be respected."

9

*Flener v. Barnhart*, 361 F.3d 442, 448 (7th Cir. 2004).

Notably, plaintiff does not take issue with the ALJ's weighing of the medical evidence that was before him, or with the ALJ's assessment of her credibility. Further, she does not claim that her IQ has, in fact, been found to be in the range of 60 to 70. Rather, her argument is based on speculation that IQ testing would have resulted in scores between 60 and 70.

For the reasons discussed above, substantial evidence supports the ALJ's conclusion that the record did not demonstrate that Ms. Turner had deficits in adaptive functioning prior to the age of 22. His decision not to order IQ testing was reasonable, since IQ test results in the range of 60 to 70 would not, standing alone, show that Ms. Turner met the requirements of Listing 12.05C. Under these circumstances, the Court will defer to "the ALJ's reasoned judgment of how much evidence to gather." *Flener v. Barnhart*, 361 F.3d 442, 448 (7th Cir. 2004).

## Conclusion

The Commissioner's final decision denying Diana Turner's application for social security disability benefits is **AFFIRMED.**

The Clerk of Court is directed to enter judgment in favor of defendant.

**IT IS SO ORDERED.**

**DATED:**   July 19, 2013.

> s/ Clifford J. Proud
> **CLIFFORD J. PROUD**
> **UNITED STATES MAGISTRATE JUDGE**